[Cite as *Fatica Renovations, L.L.C. v. Bridge*, 2018-Ohio-4949.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| FATICA RENOVATIONS, LLC, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-G-0150** |
| WILLIAM W. BRIDGE, III, et al., | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 2016 M 000919.

Judgment: Affirmed.

*David L. Van Slyke*, Plunkett & Cooney, P.C., 300 East Broad Street, Suite #590, Columbus, OH 43215 (For Plaintiff-Appellee).

*William W. Bridge, III*, pro se, PMB 50931, 700 North Valley Street, Suite B., Anaheim, CA 92801 (Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, William W. Bridge, III, appeals the ruling granting summary judgment in favor of substituted plaintiffs, Adam and Courtney Cramer, on their claims for injunctive relief and to quiet title. He argues that the order enjoining him from disseminating information regarding ownership of the at-issue real property violates his constitutional right to free speech. We affirm.

{¶2} This action concerns the legal interest appellant and his wife, Lisa Bridge,

continue to claim in a home and land in Russell, Geauga County, Ohio, despite that property having been sold in foreclosure in November 2013. In November 2001, Lisa was the sole owner of the property as a result of a quit claim deed appellant executed in her favor. On December 7, 2001, she signed a promissory note for $467,000, payable to Aames Home Loan and executed and delivered an open-end mortgage to Aames Home Loan as security.

{¶3} Over the next few years, the Bridges lived on the Russell property and made payments on the loan. At some point, Aames Home Loan assigned the mortgage to Bankers Trust of California, N.A. in Trust for the Benefit of the Holders of Aames Mortgage Trust 2002-1 Mortgage Pass Through Certificates Series 2002-1. Following the assignment, Bankers Trust of California changed its name to Deutsche Bank N.A.

{¶4} In September 2007, appellant and Lisa brought an action against several defendants in the United States District Court for the Northern District of Ohio, asserting that multiple violations of federal statutes occurred during servicing of their loan. Both Aames Home Loan and Deutsche Bank were named as defendants. After the case had been pending for five years, Deutsche Bank filed a counterclaim for foreclosure, alleging that Lisa was in default on the loan payments.

{¶5} On September 6, 2013, the district court granted Deutsche Bank's motion for summary judgment on its counterclaim, and ordered that the Russell property be sold in foreclosure. A Master Commissioner was appointed to execute the sale, set for November 25, 2013.

{¶6} On the same day as the scheduled sale, appellant appeared at the clerk's office of the United States Bankruptcy Court for the Northern District of Ohio to file a bankruptcy petition on behalf of Lisa. The clerk accepted the filing fee and wrote at the

2

top of the bankruptcy petition that appellant attempted to submit the petition on November 25, 2013. However, since appellant was not a licensed attorney and did not have a power of attorney to act on his wife's behalf, the clerk did not time-stamp the petition as filed on that date. Instead, Lisa's bankruptcy petition was not filed until the following day, November 26, 2013.

{¶7} The Master Commissioner's sale of the subject property went forward as scheduled, and Deutsche Bank purchased it for $213,333.33. After the bank moved the district court to confirm the sale, the Bridges submitted two sets of objections to the proceeding. In the second set, they asserted that the sale must be declared null and void because Lisa had invoked the automatic stay provision of a federal bankruptcy action prior to the sale. In essence, the Bridges argued that the bankruptcy action was "instituted" for purposes of the automatic stay when appellant handed the petition to the bankruptcy court clerk. In addition to their objections, the Bridges moved for relief from the foreclosure judgment under Civ.R. 60(B).

{¶8} In February 2015, the federal district court rendered two judgments. In the first judgment, the district court overruled the Bridges' objections to the sale. The court rejected their "automatic stay" argument, holding that, Lisa's bankruptcy petition was not filed when presented, but rather the day after the Master Commissioner's sale. In its second judgment, the district court confirmed the sale to Deutsche Bank. In May 2015, the Master Commissioner, therefore, filed a deed with the Geauga County Recorder documenting the transfer.

{¶9} The Bridges filed three appeals before the Sixth Circuit Court of Appeals in regard to the foreclosure proceeding. While these appeals were pending, the Bridges submitted an Affidavit and Notice of Lis Pendens with the Geauga County Recorder,

3

claiming to have an interest in the Russell property as a consequence of the pending appeals. In October 2015, however, the federal appellate court dismissed all three appeals for lack of prosecution.

{¶10} Approximately six months later, in March 2016, the Bridges submitted an amended Affidavit and Notice of Lis Pendens, again claiming an interest in the property due to pending 60(B) motion for relief from the foreclosure order from the federal district.

{¶11} After the sale to Deutsche Bank was confirmed, the Bridges vacated and moved to an abutting property owned by Lisa's mother. After filing the amended Notice of Lis Pendens, appellant taped a copy to the front door of his prior residence.

{¶12} After holding the Russell property for approximately one year, Deutsche Bank placed the property for sale via internet auction. Prior to the auction, potential bidders were permitted to view the property. During viewing, Lou Fatica, the sole owner of Fatica Renovations, LLC, saw the copy of the Notice of Lis Pendens taped to the front door. After being informed by two different titles companies that the Bridges did not have a valid claim to the property, Fatica submitted the winning bid in the auction, agreeing to pay $285,584 for it. In June 2016, Deutsche Bank filed a special warranty deed with the Geauga County Recorder conveying the property to Fatica Renovations.

{¶13} Over the next three months, Fatica made significant improvements to the residence. Once the improvements were completed, he hired a licensed broker to sell the property, listing for $685,000. On November 6, 2016, the broker held an open house. When leaving the open house, she noticed that a professional sign had been erected on Lisa's mother's property instructing to tune-in to a low frequency a.m. radio station if they wanted to know more about the ownership. Upon tuning in the station, the broker heard a recorded message stating that the property's prior owner had lost it in a wrongful

4

foreclosure action, and that she was still trying to have the foreclosure sale declared null and void. The message further warned that no one should purchase the property without first consulting a lawyer.

{¶14} Appellant was responsible for the sign recording. Fatica also learned that appellant had a website that set forth identical information stated in the recorded message. In response, Fatica Renovations instituted the underlying action. The complaint seeks a declaratory judgment, injunctive relief, to quiet title, and damages for slander to title.

{¶15} Initially, the trial court denied Fatica Renovations' motion for a temporary restraining order because it did not adequately state the efforts made to provide notice to the Bridges. Nevertheless, the trial court scheduled a hearing on Fatica Renovations' motion for a preliminary injunction for December 5, 2016. Prior to that date, Fatica Renovations' counsel had failed to serve the complaint on the Bridges. Counsel, however, informed appellant of the hearing date via an email. Appellant was therefore present at the hearing and was served with a copy of the complaint immediately before the hearing began. Service on Lisa did not occur until after the trial court granted a preliminary injunction.

{¶16} The preliminary injunction enjoins the Bridges from doing anything to interfere with Fatica Renovations' efforts to sell the subject property and requires release of the two Notices of Lis Pendens, termination of the website, and removal of the sign. Appellant, acting pro se and by himself, immediately appealed, but we dismissed for lack of a final judgment. *See Fatica Renovations, LLC v. Bridge*, 11th Dist. Geauga No. 2017-G-0106, 2017-Ohio-1419.

{¶17} During the pendency of the foregoing appeal, Fatica Renovations sold the

5

home and property to Adam and Courtney Cramer. Following our dismissal, the Cramers became substitute plaintiffs in place of Fatica Renovations, no longer with any interest in the outcome.

{¶18} In conjunction with the motion to substitute, the Cramers also gave notice to dismiss their slander to the title claim. The action proceeded on the three remaining claims for a permanent injunction, declaratory judgment, and to quiet title.

{¶19} The Bridges ultimately filed an answer to the complaint on September 5, 2017, approximately one week after the Cramers moved in the alternative for default judgment or summary judgment on all remaining claims. After the answer was filed, the Cramers reasserted their summary judgment motion. In relation to all three claims, they contended that, as a consequence of the foreclosure proceedings, the Bridges no longer had any legal interest in the Russell property. The Cramers also argued that the Bridges were barred by collateral estoppel from relitigating whether Lisa's bankruptcy petition invoked the automatic stay provision prior to the foreclosure sale. In support, the Cramers attached to their motion copies of various submissions and judgments from both the bankruptcy and foreclosure proceedings.

{¶20} In response, appellant moved to strike the motion for summary judgment, maintaining that, since Fatica Renovations sold the property to the Cramers, the permanent injunction claim was moot. Appellant also argued the "automatic stay" issue asserting delivery of the petition to the bankruptcy clerk and paying the filing fee invoked the stay provision, thereby rendering the foreclosure sale null and void.

{¶21} After allowing appellant additional time to complete discovery, the trial court denied his motion to strike the Cramers' summary judgment motion. The court rejected appellant's assertion that the bankruptcy stay was invoked prior to the foreclosure and

that, regardless, it did not have the authority to overturn the federal district court's ruling on the issue.

{¶22} Thereafter, in a separate judgment, the trial court granted summary judgment in favor of the Cramers. The court held that appellant was not permitted to collaterally attack the federal district court's rejection of his "automatic stay" argument in the context of this case. Based upon this, the court further concluded that the foreclosure sale was valid, and that appellant and Lisa no longer have any interest in the Russell property. Therefore, the Cramers were entitled to a judgment removing all clouds on their title and a permanent injunction enjoining the Bridges from disseminating information asserting that they have an interest.

{¶23} As in the first appeal, only appellant, William W. Bridge, III, has appealed the summary judgment determination. He raises three assignments for review:

{¶24} "[1.] The trial court erred in granting appellees' motions for preliminary and permanent injunctions because the preliminary and permanent injunctions violate appellant's right to free speech.

{¶25} "[2.] The trial court erred in scheduling and holding the preliminary injunction hearing when it became aware both defendants were not served with the summons and complaint, and appellant was served with summons and complaint in the courtroom just moments before the preliminary hearing commenced, and by failing to dismiss the complaint or reschedule the hearing to ensure service of process on all parties providing defendants with fair and reasonable notice sufficient to prepare for the preliminary injunction hearing.

{¶26} "[3.] The trial court erred in granting judgment when appellant was denied minimal due process throughout the trial court proceedings, rendering the judgment void

7

ab initio."

{¶27} Under his first assignment, appellant contends that the permanent injunction is unlawful because it violates his right to free speech under the First Amendment. The injunction prohibits appellant from disseminating information suggesting that he and his wife have an interest in the Russell property. There is no dispute that the speech at issue constitutes commercial speech.

{¶28} "Commercial speech is afforded less constitutional protection than other constitutionally guaranteed expression. Accordingly, the United States Supreme Court in *Central Hudson Gas & Electric Corp. v. Public Service Comm. of N.Y.*, [477 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980)] promulgated a four-part test for assessing governmental restrictions on commercial speech as distinguished from more fully protected speech. First, only commercial speech that is truthful and not misleading receives First Amendment protection. Second, a restriction on truthful, not misleading commercial speech must seek to implement a substantial governmental interest. Third, the restriction must directly advance the governmental interest involved. Finally, the restriction must not be more extensive than necessary to serve that interest." (Footnotes and citations omitted.) *Genesis Outdoor, Inc. v. Cuyahoga Heights*, 8th Dist. Cuyahoga No. 79781, 2002-Ohio-2141, ¶23.

{¶29} As the first prong of *Central Hudson* states, the First Amendment does not provide any protection for commercial speech that is false or misleading. *First Resort, Inc. v. Herrera*, 80 F.Supp.3d 1043, 1049-1050 (N.D.Calif.2015). Given that the primary purpose of commercial speech is to provide information to the public by means of advertising, such speech can be suppressed when the stated information is likely to deceive the public. *Id.*

8

**{¶30}** Commercial speech has been defined in two ways. First, it has been described as "'speech that does no more than propose a commercial transaction.'" *Tipp City v. Dakin*, 186 Ohio App.3d 558, 2010-Ohio-1013, 929 N.E.2d 484, ¶31 (2d Dist.), quoting *United States v. United Foods, Inc.*, 533 U.S. 405, 409, 121 S.Ct. 2334, 150 L.Ed.2d 438 (2001). Second, it has been characterized as an "'expression related solely to the economic interest of the speaker and its audience.'" *Id.*, quoting *Central Hudson*, 477 U.S. at 561.

**{¶31}** There is no factual dispute that the statements made about the ownership of the property were false. Appellant's assertion that he or Lisa maintained an interest in the property was based upon legal arguments decided against him by the federal district, court and his appeal was dismissed for failure to prosecute

**{¶32}** Res judicata is applicable to final judgments of a federal district court; i.e., a party is barred from re-litigating a matter in a state court that was previously decided in a federal court. *Rogers v. City of Whitehall*, 25 Ohio St.3d 67, 70, 494 N.E.2d 1387 (1986). The doctrine of res judicata covers two related concepts: claim preclusion and issue preclusion. *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶6. As relevant to our case, issue preclusion "serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies. [*Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 392,] at 395, 692 N.E.2d 140. Issue preclusion applies even if the causes of action differ. Id." *Id.* at ¶7.

**{¶33}** As to the "privity" requirement, the Supreme Court of Ohio has stated that "'privity "is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within *res judicata*."

9

*Bruszewski v. United States* (C.A.3, 1950), 181 F.2d 419, 423 (Goodrich, J., concurring).'"
*Brown v. Dayton*, 89 Ohio St.3d 245, 248, 730 N.E.2d 958 (2000), quoting *Thompson v. Wing*, 70 Ohio St.3d 176, 184, 637 N.E.2d 917 (1994).

{¶34} Under the facts of this case, Deutsche Bank was a party to the foreclosure action and purchased the property at the foreclosure sale. The bank subsequently sold the property to Fatica Renovations, which then conveyed it to the Cramers. Given that the Cramers presently have the same interest as to the confirmation of the foreclosure sale that Deutsche Bank did during the federal action, they are in privity with the bank. Accordingly, since res judicata is applicable in this situation, the trial court correctly held the federal district court's ruling on appellant's "automatic stay" argument is binding, and appellant cannot relitigate the issue for purposes of this case.

{¶35} As part of a general discussion in his appellate brief, appellant argues that a sale in violation of a bankruptcy stay is "null and void" for all purposes. By wording his argument in this way, he raises the specter that a violation of a bankruptcy stay is akin to a lack of subject matter jurisdiction. Even assuming arguendo that this comparison is justified, the fact that an issue pertains to subject matter jurisdiction does not mean that a party will be allowed to reargue the issue on multiple occasions. Once the party has had a full opportunity to argue the issue before a court of competent jurisdiction, he can only attack the validity of the decision through a direct appeal. *See CitiMortgage, Inc. v. Oates*, 2013-Ohio-5077, 4 N.E.2d 1101 (11th Dist.).

{¶36} As a final point, during the period immediately prior to the filing of this case by Fatica Renovations, part of appellant's contention that he and Lisa might be restored as owners of the property was predicated upon the fact that their Civ.R. 60(B) motion for relief from the foreclosure judgment was still pending in the federal district court. But,

only one day after this case was initiated, that motion was denied. Thus, when the permanent injunction was granted, it barred only false statements as permitted.

{¶37} Given the falsity, appellant's commercial speech was not entitled to any First Amendment protection claim, and he has failed to demonstrate the trial court erred in granting summary judgment. His first assignment is without merit.

{¶38} Under his next assignment, appellant states that the preliminary injunction decision must be reversed because he was denied his constitutional due process rights both before and during the December 5, 2016 hearing. First, he claims he was denied a fair hearing because he was not served with the complaint until minutes before the start of the preliminary injunction hearing. Second, he contends the trial court did not permit him to testify on his own behalf during the proceeding.

{¶39} When a preliminary injunction has been preempted by the issuance of a permanent injunction, the substance of the preliminary injunction becomes moot. *Great Plains Exploration, LLC v. City of Willoughby*, 11th Dist. Lake No. 2006-L-022, 2006-Ohio-7009. ¶13; *City of Columbiana v. J & J Car Wash, Inc.*, 7th Dist. Columbiana No. 04 CO 20, 2005-Ohio-1336, ¶21. To the extent that any errors were made as a part of the preliminary injunction procedure, they did not affect appellant's ability to respond to the Cramers' summary judgment motion and the dispositive issue therein. Accordingly, since appellant was not prejudiced in the ultimate resolution of the case, his second assignment lacks merit.

{¶40} Under his final assignment, appellant asserts that, during the remainder of the action after the issuance of the preliminary injunction, events occurred that resulted in a violation of his due process rights. First, he claims that the documents attached to the Cramers' motion for summary judgment were not properly certified. But the record

11

does not support his assertion. The majority of the documents relating to the stay issue were certified by the clerk of the federal district court in the foreclosure proceeding. This includes the final judgment in which the district court rejected appellant's stay argument. Even though the attached copy of appellant's amended objections to the confirmation of the sale was not certified, appellant attached a copy of his original set of objections to his motion to strike the Cramers' motion. That document verifies that appellant asserted the stay issue before the district court before the foreclosure sale was confirmed.

{¶41} Second, appellant contends that he was denied due process because the trial court did not enjoin Fatica Renovations from selling to Cramers during the pendency of the case. Appellant never requested that relief and, therefore, fails to demonstrate error. *See State ex rel. Gibbs v. Concord Twp. Trustees*, 152 Ohio App.3d 387, 2003-Ohio-1586, 787 N.E.2d 1248, ¶37 (11th Dist.)

{¶42} Third, appellant states that a due process violation occurred when Fatica Renovations' trial counsel did not serve a copy of the complaint upon the Cramers when they were substituted as plaintiffs. But, even if an error occurred, it was not prejudicial to appellant.

{¶43} Fourth, appellant argues that the trial court did not afford him minimal due process by making a finding on the "automatic stay" issue before he had an opportunity to file his answer. On August 7, 2017, as part of a decision on procedural motions filed after this court's dismissal of appellant's first appeal, the trial court found that the federal foreclosure sale was proper because Lisa did not file her bankruptcy petition prior to the sale date. However, in subsequently entering summary judgment for the Cramers, the court based its determination upon the legal conclusion that the federal district court's holding on the stay issue was binding precedent. Thus, the factual finding in the August

12

7, 2017 decision was inconsequential to the final resolution of the case.

{¶44} Fifth, appellant asserts that a due process violation occurred when the trial court entered final judgment without holding a jury trial, as he requested in his answer. Under Ohio law, though, the specific purpose of summary judgment is to determine if a jury trial is needed to resolve a factual dispute. *National City Real Estate Services LLC v. Frazier*, 2018-Ohio-982, 96 N.E.3d 311, ¶25 (4th Dist.). To the extent that there were no genuine issues of material fact to try, appellant was not entitled to a jury trial.

{¶45} Appellant was given a fair opportunity to respond to the summary judgment motion. Appellant's third assignment is, therefore, without merit.

{¶46} The judgment of the Geauga County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents.