UNITED AUTO WORKERS, LOCAL UNION 1112 et al., Appellees,

v.

BRUNNER, Secy. of State, et al., Appellees; The State of Ohio et al., Appellants.

Franklin County Board of Commissioners, Appellee,

v.

The State of Ohio et al., Appellants.

[Cite as *United Auto Workers, Local Union 1112 v. Brunner*, 182 Ohio App.3d 1, 2009-Ohio-1750.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 08AP–571, 08AP–572 and 08AP–573.

Decided April 14, 2009.

2

The McTigue Law Group, Donald J. McTigue, and Mark A. McGinnis, for UAW–affiliated and Ohio AFL–CIO–affiliated appellees.

Kaliniz, Iorio & Feldstein Co., L.P.A., and Christine A. Reardon; and the Ohio Education Association and Linda K. Fiely, for OEA-affiliated appellees.

Manley Burke, L.P.A., Timothy M. Burke, and Daniel J. McCarthy, for appellee Jennifer L. Brunner, Secretary of State.

Ron O'Brien, Franklin County Prosecuting Attorney, Nick A. Soulas Jr., First Assistant Prosecuting Attorney, and Denise L. DePalma, Assistant Prosecuting Attorney, for appellee Franklin County Board of Commissioners.

Richard Cordray, Attorney General, and Peggy W. Corn and Sharon A. Jennings, Assistant Attorneys General, for appellants the state of Ohio et al.

Richard Cordray, Attorney General, and Lori Weisman, Assistant Attorney General, for amicus curiae Governor Ted Strickland.

---

BROGAN, Judge.

{¶ 1} These three consolidated appeals are before the court upon appeals from a judgment of the Franklin County Court of Common Pleas entering partial summary judgment in cases challenging the validity and constitutionality of Am.Sub.H.B. No. 694, enacted by the 126th General Assembly. This legislation made significant changes to existing Ohio statutes governing political contributions and the award of public contracts to contributors. The act enacted two new code sections, R.C. 109.96 and 3517.093, and amended two existing sections, R.C. 3517.13 and 3517.992. Although the complaints in this action challenge the constitutionality of the legislation on a number of grounds, including the substance of the statutory language enacted, the present appeal concerns only the manner in which the legislation was enacted and subsequently modified. The

constitutionality of the legislative language itself is not properly before us, and thus the substantive text of the legislation will not be developed in detail.

{¶ 2} The first action filed in the trial court was brought by the United Auto Workers Local Union 1112, the Ohio Education Association, the Ohio AFL–CIO, and other labor-union-affiliated entities, hereinafter collectively referred to as "the union plaintiffs." That action challenged the constitutionality of Am.Sub. H.B. No. 1, which imposes limits on the use of corporate or union funds or property for political purposes. The trial court's current judgment does not address any issues in this Am.Sub.H.B. No. 1 case.

{¶ 3} The second action was filed largely by the same union plaintiffs (with a few abstentions) and challenges the constitutionality of Am.Sub.H.B. No. 694. Both this and the first action named the Ohio secretary of state as the defendant, but the secretary of state indicated that she would not defend the validity of Am.Sub.H.B. No. 694. The trial court granted leave for the Ohio attorney general to intervene and defend the action.

{¶ 4} The third action in the trial court was brought by the Franklin County Board of Commissioners, also challenging the validity of Am.Sub.H.B. No. 694. The complaint named both the state of Ohio and the Ohio attorney general as defendants. Among other substantive challenges to Am.Sub.H.B. No. 694, the county sought to enjoin enforcement on grounds of unconstitutional retroactivity of some provisions that prevented the county from executing a contract with the Columbus law firm of Bricker & Eckler L.L.P. for bond work to finance construction of the new Franklin County Courthouse. Bricker & Eckler eventually moved successfully to intervene in the action.

{¶ 5} In their action attacking the validity of Am.Sub.H.B. No. 694, the union plaintiffs moved for summary judgment on certain aspects of their complaint— counts X, XI, and XII—that allege procedural deficiencies in enactment of the bill. The trial court granted partial summary judgment on this motion by its decision rendered December 5, 2007, holding that Am.Sub.H.B. No. 694 was not constitutionally enacted because it was not signed by the presiding officers of the General Assembly. This decision was not immediately journalized.

{¶ 6} Contemporaneously, the General Assembly took further action affecting the code sections at issue. Aware of, or anticipating, challenges to the substantive language of Am.Sub.H.B. No. 694 and the manner in which the bill was enacted, the General Assembly included provisions in the 2007 budget bill (H.B. No. 119) that purported to reenact and amend the challenged provisions of Am.Sub.H.B. No. 694. The governor signed the budget bill on June 30, 2007.

{¶ 7} On December 17, 2007, the attorney general and the state of Ohio moved to set aside the trial court's initial decision on the basis that it was mooted by the

subsequent enactment of H.B. No. 119, which remedied any procedural infirmities in the initial enactment of Am.Sub.H.B. No. 694. In response, the union plaintiffs and Franklin County amended their complaints to assert claims that H.B. No. 119 could not validate or amend Am.Sub.H.B. No. 694's public-contracting provisions because they had never been initially enacted lawfully and also on the basis that attaching this campaign-finance provision to the general budget bill violated the Ohio Constitution's single-subject provision against "log-rolling" legislation.

{¶ 8} On June 18, 2008, the trial court granted motions by the union plaintiffs and the secretary of state finding that H.B. No. 119 could not validate or amend Am.Sub.H.B. No. 694 and that inclusion of the relevant provisions violated the single-subject rule. The trial court then collectively journalized both this decision and the December 5, 2007 decision, leading to the present appeal.

{¶ 9} The attorney general brings the following three assignments of error on appeal:

[1.] The trial court erred in invalidating Am.Sub.H.B. 694 due to the manner of its enactment.

[2.] The trial court erred in striking R.C. 3517.13, 3517.992, and 3517.093 because subsequent amendments validated the changes made to these statutes in H.B. 694, mooting Plaintiffs' claims.

[3.] The trial court erred in finding that the H.B. 119 Amendments Violate Article II, § 15(D) of the Ohio Constitution.

{¶ 10} We initially note that this matter was decided in the trial court by summary judgment, which under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 11} An appellate court's review of summary judgment is de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265; *Bard v. Soc. Natl. Bank* (Sept. 10, 1998), 10th Dist. No. 97APE11–1497, 1998 WL 598092. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. *Jones v. Shelly Co.* (1995), 106 Ohio App.3d 440, 445, 666 N.E.2d 316.

{¶ 12} With respect to our jurisdiction, the power and duty of the judiciary to determine the constitutionality, and therefore the validity, of the acts of the other branches of government has been firmly established as an essential

feature of the Ohio system of separation of powers. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 462, 715 N.E.2d 1062. The judiciary is consequently empowered to hear and determine controversies regarding the constitutionality of legislative enactments. Id.

{¶ 13} Appellants' first assignment of error asserts that the trial court erred in granting partial summary judgment for appellees based upon a finding that Am.Sub.H.B. No. 694 is invalid because it was improperly enacted.

{¶ 14} This invalidation of the bill as enacted is based upon its procedural history, which is entirely uncontroverted. The parties have accordingly entered into a stipulation both as to the required procedure for enactment of legislation and the actual circumstances surrounding the enactment of Am.Sub.H.B. No. 694.

{¶ 15} We begin with the relevant constitutional provisions governing enactment of legislation; this power is granted to the General Assembly under Section 1, Article II of the Ohio Constitution. Legislation must be passed in identical form by a majority of each house, Section 15(A), Article II, Ohio Constitution, whereupon the bill "shall be signed by the presiding officer of each house to certify that the procedural requirements for passage have been met." Section 15(E), Article II, Ohio Constitution.

{¶ 16} Once signed by the presiding officers of each house, the bill is presented to the governor for approval. The governor may sign the bill, whereupon it becomes law and is filed with the secretary of state. Section 16, Article II, Ohio Constitution. Alternatively, the governor may refuse to sign the bill and return it to the General Assembly with written objections. Id. A third course of action available to the governor is to neither sign the bill nor return it to the General Assembly, whereupon the bill becomes law after ten days without the governor's signature and is filed with the secretary of state as if the governor had signed it. Id. If the governor is unable to return a bill to the General Assembly with his written objections due to the General Assembly having adjourned, the governor may submit the bill along with his written objections to the secretary of state within ten days of the adjournment and achieve the same effect as if the bill had been returned to the legislature. Id.

{¶ 17} As a practical matter, the above constitutional requirements give rise to the following procedure in the General Assembly. Legislation introduced into either house of the General Assembly is "engrossed," or prepared in a working version for use by the legislators: the text is line-numbered with wide spaces for interlineation and is otherwise prepared for the inevitable alterations accompanying debate over the legislative language. If, after consideration, the language of the bill changes, it is engrossed again, and resubmitted and redesignated to distinguish it from the original version. The title of the legislation in the present

matter progressed from H.B. No. 694 to Sub.H.B. No. 694 to Am.Sub.H.B. No. 694 in this manner.

{¶ 18} After a bill is passed in its final form by both houses of the General Assembly, it is "enrolled," that is, reduced to the final text of the engrossed bill as approved by both houses and divested of the line numbers and extra space presented in the working versions. This enrolled bill is prepared by the clerk of the legislative chamber in which the legislation was introduced. The speaker of the House of Representatives and the president of the Senate sign the enrolled bill and present it to the governor for approval pursuant to Section 15(E), Article II, Ohio Constitution. The governor then undertakes one of the four options presented above.

{¶ 19} In the present case, H.B. No. 694 was introduced in the House, considered and amended, and passed the House as Sub.H.B. No. 694. The Senate passed the same version, then reconsidered and approved instead an amended version, Am.Sub.H.B. No. 694. This proceeded back to the House, where Am.Sub.H.B. No. 694 passed as well.

{¶ 20} The personnel of the House clerk's office then committed the error that gives rise to this aspect of the case. Instead of copying the final engrossed bill, Am.Sub.H.B. No. 694, the office prepared the enrolled version based on Sub.H.B. No. 694 (as opposed to Am.Sub.H.B. No. 694), and added signature pages for the speaker of the House and president of the Senate, who signed them. Sub.H.B. No. 694, despite not being the version of legislation ultimately approved by both chambers of the legislature, proceeded with the signature of the presiding officers of the two chambers to the governor, who duly signed and filed the enrolled bill with the secretary of state.

{¶ 21} The clerk of the House learned of the error and attempted to correct it by obtaining permission from the secretary of state's office to substitute the text of Am.Sub.H.B. No. 694 in place of Sub.H.B. No. 694 as attached to the signatures of the legislative officers and governor. All parties to this appeal have been at pains to note that this substitution was in no way undertaken in a surreptitious or covert manner, and that all persons concerned agree that at no time in the events outlined above was there any attempt to conceal, or failure to disclose, the nature of the mistake and the circumstances surrounding it. Where the parties disagree is on the impact of these errors upon the validity of the legislation.

{¶ 22} Both sides to this case assert that they champion the cause of preservation of the legislature's fundamental authority as defined in the Ohio Constitution and the due protection of the legislature's rights granted therein. The question before us is how best to preserve and protect that constitutionally granted authority: Should we protect the clearly defined and constitutionally mandated

procedural steps by which we can most reliably receive the intent of the legislature and by which the hallmarks of its authority are expressed, or can we give due force and effect to the legislature's readily discernible intent in passing the legislation concerned by permitting a simple and clear remedy to a well-defined and uncontroverted clerical error such as occurred here?

{¶ 23} We begin our analysis with the premise that the Ohio Constitution embodies the supreme law of Ohio and reflects the will of the people, who hold the ultimate political power in the state. *Cincinnati, Wilmington & Zanesville RR. Co. v. Commrs. of Clinton Cty.* (1852), 1 Ohio St. 77, 85; *State ex rel. Weinberger v. Miller* (1912), 87 Ohio St. 12, 99 N.E. 1078; *State ex rel. Ohio Gen. Assembly v. Brunner*, 114 Ohio St.3d 386, 2007-Ohio-3780, 872 N.E.2d 912, ¶ 30. However, because the Constitution delegates express legislative authority to the General Assembly, a court must not declare a statute unconstitutional unless it appears "beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.

{¶ 24} In order for a bill introduced in the General Assembly to successfully pass into law in Ohio, it must follow the constitutional procedure outlined above. The attestation requirement for the presiding officers of the House and Senate is mandatory. *Maloney v. Rhodes* (1976), 45 Ohio St.2d 319, 326, 74 O.O.2d 499, 345 N.E.2d 407; *Ritzman v. Campbell* (1915), 93 Ohio St. 246, 112 N.E. 591; *State v. Kiesewetter* (1887), 45 Ohio St. 254, 259, 12 N.E. 807 ("The signing is, therefore, for the benefit of the people in their examination to ascertain what is, in what is not law").

{¶ 25} In the present case, the presiding officers of each chamber of the General Assembly attested to the passage of Sub.H.B. No. 694 (not Am.Sub.H.B. No. 694), by signing it as an enrolled bill. The governor then duly signed the bill that had been enrolled and attested by these officers. The journals of the House and Senate reflect that Sub.H.B. No. 694 was approved by the House but not by the Senate. Under Section 15(A), Article II, Ohio Constitution, no law can be enacted without the concurrence of the majority of both chambers of the General Assembly. Sub.H.B. No. 694 is therefore not lawfully enacted. Conversely, because no bill can become law without the mandatory attestation of the presiding officers of each chamber of the General Assembly, and Am.Sub.H.B. No. 694 was not so enrolled, Am.Sub.H.B. No. 694 is no more the law of Ohio than Sub.H.B. No. 694.

{¶ 26} No one disputes the innocence of the clerical error that led to the present controversy; the innocence of that error, however, merely underscores

the dangers we face if we open the door to a breach of the strict constitutional procedures for enacting legislation in Ohio. Less innocent circumstances are not difficult to imagine by which different statutory language, on the basis of a purported clerical error, could be offered after the fact and against the will of the members of the General Assembly who had voted for or against the bill concerned. By paying strict heed to constitutional mandates in a case that can doubtlessly verge upon placing form over substance, we accept that in some instances form is substance, because it is the integrity of, and strict compliance with, such constitutional procedures that ultimately guarantee that the will of the legislature, and therefore the people, will be rigorously expressed.

{¶ 27} We accordingly find that the trial court did not err in deciding that Am.Sub.H.B. No. 694 was not properly enacted and is therefore not the law of Ohio. Appellants' first assignment of error is overruled.

{¶ 28} Appellants' second assignment of error addresses the attempted amendment of the contested provisions of Am.Sub.H.B. No. 694 by language included in the state's annual budget bill, H.B. No. 119. The trial court rejected appellants' contention that the inclusion of language restating three of the provisions affected by Am.Sub.H.B. No. 694 (R.C. 3517.093, 3517.13, and 3517.992) through attachment to the budget bill, rendered moot any challenge to the constitutionality of the original enactment of Am.Sub.H.B. No. 694.

{¶ 29} We will first briefly address the procedure in Ohio for amending a statute and the manner in which this was attempted in the case before us. Section 15(D), Article II, Ohio Constitution requires the legislature to amend a statute and include all necessary language in the amending act: "No law shall be * * * amended unless the new act contains the entire * * * section or sections amended, and the section or sections amended shall be repealed." Id. In practice, this is accomplished by including all relevant code sections, underlining new language, and reproducing deleted or replaced language as stricken through. Any unchanged language in the pertinent sections is reproduced and appears as ordinary text. Ohio Adm.Code 103-5-01(A) through (C), promulgated pursuant to R.C. 101.53.

{¶ 30} As it appears in Am.Sub.H.B. No. 119, the pertinent language restates the text of three sections as purportedly enacted or amended by Am.Sub.H.B. No. 694; this text appears as ordinary text if the language of Am.Sub.H.B. No. 694 is unchanged, or is underlined and stricken through as necessary for the changes intended under Am.Sub.H.B. 119. 2006 Ohio Legis.Serv. 3293–313; 2007 Ohio Legis.Serv. 987–1016.

{¶ 31} Appellants argue that Ohio precedent establishes that a constitutional challenge to a statute may be mooted if the objectionable aspects of the

legislation are later removed by amendment.  See, e.g., *State v. McClendon* (Dec. 26, 2000), 12th Dist. No. CA2000–02–005, 2000 WL 1875818; *State v. Brinkley* (Oct. 30, 2000), 5th Dist. No. 1999CA00412, 2000 WL 1634070.  This proposition is probably the majority view in other jurisdictions:  "[A]n amending statute can remedy a constitutional defect in the original act.  * * * 'A majority of courts seem to have rejected the theory that an unconstitutional act has no existence, at least for the purpose of amendment.' "  *People v. Kevorkian* (1994), 447 Mich. 436, 527 N.W.2d 714, quoting 1 Sutherland, Statutory Construction (5th Ed.) 182, Section 22.04;  see also *Kopp v. Fair Political Practices Comm.* (1995), 11 Cal.4th 607, 47 Cal.Rptr.2d 108, 905 P.2d 1248.

{¶ 32} Assuming, arguendo, that this doctrine of "implied validation" is the rule in Ohio, we find it inapplicable to the present facts.  The use of implied validation in the above-cited cases and their progeny, with a few exceptions, deals with constitutional infirmities in the substantive language of statutes and applies the rule to reach back and give effect to the modified, amended, and presumably now-constitutional language of the initial version as modified.  The case before us does not fit this pattern.

■■■  {¶ 33} Instead, we rely on the clear precedent set by the Supreme Court of Ohio addressing the effect of amendments to those statutes that are invalid in their entirety from the outset due to the circumstances of their enactment.  The controlling case is *Stevens v. Ackman* (2001), 91 Ohio St.3d 182, 743 N.E.2d 901.

{¶ 34} *Stevens* addressed the validity of a code section originally enacted in 1996 by Am.Sub.H.B. No. 350, which was subsequently declared unconstitutional in its entirety by *Ohio Academy of Trial Lawyers*, 86 Ohio St.3d 451, 715 N.E.2d 1062.  The legislature later passed legislation restating and purportedly amending the code section concerned, using the typeface conventions of Ohio Adm.Code 103–05–01 and R.C. 101.53 for existing law and alterations thereto.  The section was not deemed reenacted.  *Stevens*, 91 Ohio St.3d at 195, 743 N.E.2d 901.  In so holding, the Supreme Court of Ohio observed that the legislature, even if it intends the ordinary text in an otherwise-amending statute to be a recognition of existing prior law, any infirmity in enacting that prior law is not remedied by the subsequent amending statute:

> "The courts have generally held, notwithstanding this [current Section 15(D), Article II] and similar constitutional provisions, that where an act is amended, the part of the original act which remains unchanged is to be considered as having continued in force as the law from the time of its original enactment, and new portions as having become the law only at the time of the amendment.  * * * '[B]y observing the constitutional form of amending a section of a statute, the [l]egislature does not express an intention then to enact the whole section as amended, but only an intention then to enact the change which is

indicated. Any other rule of construction would surely introduce unexpected results and work great inconvenience.' "

(Citations omitted.) *Stevens*, 91 Ohio St.3d at 194–195, 743 N.E.2d 901, quoting *Weil v. Taxicabs of Cincinnati, Inc.* (1942), 139 Ohio St. 198, 206, 22 O.O. 205, 39 N.E.2d 148, quoting *McLaughlin v. Newark* (1894), 57 N.J.L. 298, 301, 30 A. 543. Applying this reasoning, the Supreme Court in *Stevens* reached the following holding:

> In accordance with these precedents, it is apparent that R.C. 2744.02(C) continued forward as purportedly enacted in Am.Sub.H.B. No. 350, despite Middletown's arguments based on Section 15(D), Article II. Clearly, the General Assembly did not intend to reenact R.C. 2744.02(C) in Am.Sub.H.B. No. 215. Therefore, that act neither reenacted nor enacted R.C. 2744.02(C). When this court in *Sheward* struck down Am.Sub.H.B. No. 350, it struck down the version of R.C. 2744.02(C) that Am.Sub.H.B. No. 350 attempted to enact, and R.C. 2744.02(C) remains invalid as a result of *Sheward*.

> For all the foregoing reasons, we hold that R.C. 2744.02(C), as purportedly enacted in Am.Sub.H.B. No. 350, is invalid. Furthermore, R.C. 2744.02(C) was neither enacted nor reenacted by Am.Sub.H.B. No. 215.

*Stevens*, 91 Ohio St.3d at 195, 743 N.E.2d 901.

{¶ 35} In the present case, the General Assembly similarly did not sufficiently comply with the statutory and constitutional requisites to reenact the pertinent code sections in their entirety. The title of Am.Sub.H.B. No. 119 explicitly states that it amends, rather than enacts, the language of R.C. 3517.093, 3517.13, and 3517.992. 2007 Ohio Legis.Serv. 987. As printed in the enrolled version of Am.Sub.H.B. No. 119, much of the pertinent language of the affected code sections reproduces the language of Am.Sub.H.B. No. 694 and is not underlined, as required by Ohio Adm.Code 103–5–01(A) through (C), R.C. 101.53, and *Stevens*, 91 Ohio St.3d 182, 743 N.E.2d 901, to reflect that it is new statutory language. It thus cannot reflect newly enacted statutory language by the legislature because much of the "existing language" text reflected therein is based upon Am.Sub.H.B. No. 694 versions of the code that never became law.

{¶ 36} We accordingly find that the trial court did not err in holding that Am.Sub.H.B. No. 119 could neither amend nor reenact by partial reference all the contested statutory language. Appellants' second assignment of error is accordingly overruled.

{¶ 37} Appellants' third assignment of error asserts that the trial court erred in holding that the attempted reenactment and amendment of Am.Sub.H.B. No. 694's affected provisions by means of reintroduction in Am.Sub.H.B. No. 119 violated the single-subject rule of Section 15(D), Article II, Ohio Constitution.

Applying the well-settled principle that a court will resolve a constitutional challenge to the validity of a statute only on the narrowest grounds necessary to resolve the controversy, *State ex rel. Clarke v. Cook* (1921), 103 Ohio St. 465, 470, 134 N.E. 655, we find that our previous holdings in resolving the first and second assignments of error render resolution of this issue unnecessary. In consideration of the mandates of judicial restraint in such cases, we find the third assignment of error moot.

{¶ 38} In accordance with the foregoing, appellants' first and second assignments of error are overruled, and the third assignment of error is found to be moot. The judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

FRENCH, P.J., and TYACK, J., concur.

BROGAN, J., of the Second Appellate District, sitting by assignment.