[Cite as *Allied Health & Chiropractic, L.L.C. v. State*, 2024-Ohio-1976.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ALLIED HEALTH & CHIROPRACTIC,
LLC, ET AL.,                                    :

      Plaintiffs-Appellees,            :
                                                            No. 112991
      v.                                            :

STATE OF OHIO, ET AL.,                     :

      Defendants-Appellants.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART AND VACATED IN PART
**RELEASED AND JOURNALIZED:** May 23, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-922186

---

### *Appearances:*

Flowers & Grube, Paul W. Flowers, and Kendra N. Davitt,
*for appellee.*

David Yost, Ohio Attorney General, and Ann Yackshaw,
Michael A. Walton, and Elizabeth H. Smith, Assistant
Attorneys General, *for appellants* State of Ohio, Ohio
Governor Mike DeWine, Ohio Attorney General Dave
Yost, and Ohio General Assembly.

David Yost, Ohio Attorney General, and Katherine J.
Bockbrader, Assistant Attorney General, *for appellant*
Ohio State Chiropractic Board.

David Yost, Ohio Attorney General, and Hilary R.

Damaser, Assistant Attorney General, *for appellant* Ohio Department of Public Safety.

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Defendants-appellants state of Ohio, Ohio Governor Mike DeWine, Ohio Attorney General Dave Yost, Ohio General Assembly, Ohio State Chiropractic Board, and the Ohio Department of Public Safety (collectively "the state" or "the defendants") bring the instant appeal challenging several judgments from the trial court stemming from plaintiffs-appellees Allied Health & Chiropractic, LLC; Ty Dahodwala, D.C.; First Choice Chiropractic, LLC; James Fonner, D.C.; Prestige Chiropractic & Injury, LLC; Rennes Bowers, D.C.; and Schroeder Referral Systems, Inc.'s (collectively "the plaintiffs") claims that R.C. 149.43(A)(1)(mm) and 1349.05 (collectively "the contested sections"), as enacted by Am.Sub.H.B. 166 ("the 2020-2021 Biennial Budget Bill" or "the Bill") are unconstitutional. After a thorough review of the record and law, this court affirms in part and vacates in part.

## I. Factual and Procedural History

### A. The Initial Complaint

{¶ 2} In September 2019, the plaintiffs filed a complaint seeking declaratory judgment and injunctive relief against the state of Ohio, the Ohio General Assembly, and the Ohio State Chiropractic Board (collectively, "the initial defendants"). The complaint sought a declaratory judgment that R.C. 149.43(A)(1)(mm) and 1349.05 were unconstitutional, preliminary and permanent injunctions prohibiting the state from enforcing these sections, and class certification of similarly suited plaintiffs.

{¶ 3} The substance of this dispute centers around two sections of the Ohio Revised Code that were enacted or amended by the Bill: R.C. 149.43(A)(1)(mm) (as amended) and 1349.05 (as enacted), that went into effect on October 17, 2019. The plaintiffs alleged that these sections were unconstitutional (1) in their enactment because they violated the Ohio Constitution's One-Subject Rule in Article II, Section 15(D), and (2) in substance, arguing that R.C. 1349.05 alone violated the free speech protections of the Ohio Constitution, Article I, Section 11, and the equal protection guarantees the Ohio Constitution, Article I, Section 2.

{¶ 4} The contested sections pertain to a health care practitioner's ability to solicit business from parties to a motor vehicle accident or crime. R.C. 149.43, "Availability of public records for inspection and copying," was amended by the Bill to add subsection (A)(1)(mm), which added the following definition to something that is *not* a public record:

> Telephone numbers for a victim, as defined in section 2930.01 of the Revised Code, a witness to a crime, or a party to a motor vehicle accident subject to the requirements of section 5502.11 of the Revised Code that are listed on any law enforcement record or report.
>
> A record that is not a public record under division (A)(1) of this section and that, under law, is permanently retained becomes a public record on the day that is seventy-five years after the day on which the record was created, except for any record protected by the attorney-client privilege, a trial preparation record as defined in this section, a statement prohibiting the release of identifying information signed under section 3107.083 of the Revised Code, a denial of release form filed pursuant to section 3107.46 of the Revised Code, or any record that is exempt from release or disclosure under section 149.433 of the Revised Code. If the record is a birth certificate and a biological parent's name redaction request form has been accepted under section 3107.391 of the Revised Code, the name of that parent shall be redacted

from the birth certificate before it is released under this paragraph. If any other section of the Revised Code establishes a time period for disclosure of a record that conflicts with the time period specified in this section, the time period in the other section prevails.

{¶ 5} R.C. 1349.05 was enacted by the Bill; it had not existed prior. As enacted by the 2020-2021 Biennial Budget Bill, the full text of R.C. 1349.05 provided:

(A) As used in this section:

(1) "Agency" and "license" have the same meanings as in section 119.01 of the Revised Code.

(2) "Crime" and "victim" have the same meanings as in section 2930.01 of the Revised Code.

(3) "Health care practitioner" means any of the following:

(a) An individual licensed under Chapter 4731. of the Revised Code to practice medicine and surgery;

(b) An individual licensed under Chapter 4723. of the Revised Code to practice as an advanced practice registered nurse;

(c) An individual licensed under Chapter 4730. of the Revised Code to practice as a physician assistant;

(d) An individual licensed under Chapter 4732. of the Revised Code to practice as a psychologist;

(e) An individual licensed under Chapter 4734. of the Revised Code to practice as a chiropractor.

(B) No health care practitioner, with the intent to obtain professional employment for the health care practitioner, shall directly contact in person, by telephone, or by electronic means any party to a motor vehicle accident, any victim of a crime, or any witness to a motor vehicle accident or crime until thirty days after the date of the motor vehicle accident or crime. Any communication to obtain professional employment shall be sent via the United States postal service.

(C) No person who has been paid or given, or was offered to be paid or given, money or anything of value to solicit employment on behalf of another shall directly contact in person, by telephone, or by electronic means any party to a motor vehicle accident, any victim of a crime, or any witness to a motor vehicle accident or crime until thirty days after the date of the motor vehicle accident or crime. Any communication to solicit employment on behalf of another shall be sent via the United States postal service.

(D) If the attorney general believes that a health care practitioner or a person described in division (C) of this section has violated division (B) or (C) of this section, the attorney general shall issue a notice and conduct a hearing in accordance with Chapter 119. of the Revised Code. If, after the hearing, the attorney general determines that a violation of division (B) or (C) of this section occurred, the attorney general shall impose a fine of five thousand dollars for each violation to each health care practitioner or person described in division (C) of this section who sought to financially benefit from the solicitation. If the attorney general determines that a health care practitioner or person described in division (C) of this section has subsequently violated division (B) or (C) of this section, the attorney general shall impose a fine of twenty-five thousand dollars for each violation.

(E) After determining that a health care practitioner or person described in division (C) of this section has violated division (B) or (C) of this section on three separate occasions, and if that health care practitioner or person described in division (C) of this section holds a license issued by an agency, the attorney general shall notify that agency in writing of the three violations. On receipt of that notice, the agency shall suspend the health care practitioner's or the person's license without a prior hearing and shall afford the health care practitioner or the person a hearing on request in accordance with section 119.06 of the Revised Code.

{¶ 6} The complaint alleged that the contested sections would adversely affect the plaintiffs and similarly suited plaintiffs because chiropractors, as health care practitioners, rely on prompt and direct contact and communication with prospective patients. The prospective patients are typically motor vehicle accident

victims who are reached through the telephone numbers listed on police reports. The plaintiffs particularly took issue with the limitation that their solicitation of potential clients be limited to 30 days after the date of the accident or crime, and that communication was limited to only the U.S. Postal Service. Further, the complaint suggested that the provisions empowering the Ohio Attorney General to oversee and control advertising and solicitation, and impose fines, improperly undermines the State Medical Board and State Chiropractic Board from regulating the practice of medicine.

{¶ 7} In October 2019, the plaintiffs filed a motion for a preliminary injunction. The trial court thereafter held a hearing on July 9, 2020, and enjoined the enforcement of R.C. 1349.05.

{¶ 8} Also in October 2019, the initial defendants filed a motion to dismiss alleging that the plaintiffs had not named the proper parties. The plaintiffs opposed the motion and filed a motion for leave to file a first amended complaint naming new-party defendants Ohio Governor Mike DeWine, Ohio Attorney General Dave Yost, and the Ohio Department of Public Safety. The trial court granted leave.

{¶ 9} The parties engaged in significant briefing. In October 2020, the parties filed a joint stipulation of facts, which notably included documentation related to two prior bills with similar provisions to the contested sections, S.B. 148 (132nd General Assembly) and S.B. 331 (132nd General Assembly). Though these two prior bills never passed, both underwent a more rigorous vetting process, taking

significant proponent and opponent testimony, all of which were included in the joint stipulation of facts.

{¶ 10} Shortly thereafter, the defendants filed a second motion to dismiss, an answer to the first amended complaint, and a motion for summary judgment. Plaintiffs filed briefs in opposition and their own motion for summary judgment.

{¶ 11} Before these motions were ruled upon, the contested sections were amended and the state filed a third motion to dismiss pursuant to Civ.R. 12(B)(1), citing mootness due to the amendments. The third motion to dismiss argued that any complaints about the contested sections as argued in the first amended complaint were moot because of the changes made by the amendments. In January 2021, the trial court took judicial notice that the statute had been amended and allowed the parties to brief the issue. After considering the briefs, the trial court allowed the plaintiffs to amend the complaint for a second time to address the amendments, holding the motions to dismiss in abeyance until the second amended complaint was filed.

## B. The Amendments

{¶ 12} Am.Sub.H.B. 151 went into effect on November 22, 2020, amending R.C. 1349.05. The full text of R.C. 1349.05, as amended, provided:

(A) As used in this section:

(1) "Agency" and "license" have the same meanings as in section 119.01 of the Revised Code.

(2) "Crime" has the same meaning as in section 2930.01 of the Revised Code.

(3) "Health care practitioner" means any of the following:

(a) An individual licensed under Chapter 4731. of the Revised Code to practice medicine and surgery;

(b) An individual licensed under Chapter 4723. of the Revised Code to practice as an advanced practice registered nurse;

(c) An individual licensed under Chapter 4730. of the Revised Code to practice as a physician assistant;

(d) An individual licensed under Chapter 4732. of the Revised Code to practice as a psychologist;

(e) An individual licensed under Chapter 4734. of the Revised Code to practice as a chiropractor.

(4) "Victim" has the same meaning as in section 2930.01 of the Revised Code, except that it excludes any party to a motor vehicle accident.

(B) No health care practitioner, with the intent to obtain professional employment for the health care practitioner, shall directly contact in person, by telephone, or by electronic means any victim of a crime, or any witness to a motor vehicle accident or crime, other than a witness that was a party to a motor vehicle accident, until thirty days after the date of the motor vehicle accident or crime.

(C) No person who has been paid or given, or was offered to be paid or given, money or anything of value to solicit employment on behalf of another shall directly contact in person, by telephone, or by electronic means any victim of a crime, or any witness to a motor vehicle accident or crime, other than a witness that was a party to a motor vehicle accident, until thirty days after the date of the motor vehicle accident or crime.

(D)(1) Except as provided in division (D)(3) of this section, all of the following apply to a health care practitioner who, for the purpose of obtaining professional employment, contacts any party to a motor vehicle accident:

(a) The health care practitioner shall not contact the party in person at any time for the purpose of obtaining professional employment.

(b) Beginning twenty-four hours after the time of the accident, the health care practitioner may initiate contact with the party for the purpose of obtaining professional employment as follows:

(i) Through telephone, but not more than once in any forty-eight hour period;

(ii) Once through electronic mail;

(iii) Once through a text message;

(iv) Once in writing delivered through the United States postal service.

(2) Except as provided in division (D)(3) of this section, all of the following apply to a person who has been paid or given, or was offered to be paid or given, money or anything of value to contact, for the purpose of obtaining professional employment on behalf of another, any party to a motor vehicle accident:

(a) The person shall not contact the party in person at any time for the purpose of obtaining professional employment on behalf of another.

(b) Beginning twenty-four hours after the time of the accident, the person may initiate contact with the party for the purpose of obtaining professional employment on behalf of another as follows:

(i) Through telephone, but not more than once in any forty-eight hour period;

(ii) Once through electronic mail;

(iii) Once through a text message;

(iv) Once in writing delivered through the United States postal service.

(3) Divisions (D)(1) and (2) of this section do not apply to any person who solicits professional services to any party to a motor vehicle accident if the party being solicited was a previous purchaser of services from the person soliciting employment, or from the person on whose behalf employment is being solicited, and if both of the following apply:

(a) The solicitation is made under the same business or professional name that was previously used to sell services to the party to the motor vehicle accident.

(b) The person who will be providing the services has, for a period of not less than three years, operated a business or professional occupation under the same business or professional name as the name used in the solicitation.

(E) If an agency that has issued a license to a person believes that the person has violated this section, the agency shall issue a notice and conduct a hearing in accordance with Chapter 119. of the Revised Code. After determining that a person has violated this section on three separate occasions, the agency shall suspend the person's license.

{¶ 13} These changes removed several of the limitations that the plaintiffs disputed in the complaint, including (1) limiting contact with prospective clients until 30 days after the motor vehicle accident or crime, (2) mandating that the United States Postal Service shall be the only method of communication, and (3) removing the Attorney General's ability to impose fines upon those found in violation of the statute.

{¶ 14} R.C. 149.43(A)(1)(mm) was amended and went into effect on March 24, 2021, by Am.Sub.S.B. 284. This amendment retained the full text that was previously amended by the Bill but added the emphasized portion of the sentence.

Telephone numbers for a victim, as defined in section 2930.01 of the Revised Code, a witness to a crime, or a party to a motor vehicle accident subject to the requirements of section 5502.11 of the Revised Code that are listed on any law enforcement record or report, *other than when requested by an insurer or insurance agent investigating an insurance claim resulting from a motor vehicle accident.*

(Emphasis added.)

## C. The Second Amended Complaint

{¶ 15} The plaintiffs filed a second amended complaint in March 2021. The second amended complaint reasserted all the initial counts from the first amended complaint and now added that the contested sections, and the sections as amended, were unconstitutional. Several weeks later, the plaintiffs filed a motion to modify the preliminary injunction order.

{¶ 16} On April 20, 2021, the plaintiffs filed a motion for class certification.

{¶ 17} On April 23, 2021, the defendants filed a fourth motion to dismiss premised on mootness, arguing that the plaintiffs' new complaint did not adequately address the new portions of the statute and instead kept in the arguments pertaining to sections that had since been repealed, and argued that the complaint was insufficient to provide the trial court with subject-matter jurisdiction over the issues.

{¶ 18} On April 29, 2021, defendants filed a motion to stay discovery and the briefing schedule relating to plaintiffs' class certification motion, arguing that the fourth motion to dismiss remained pending and could be determinative of this matter before reaching the class-certification issues. The court granted this motion and suspended discovery and the issuance of a briefing schedule relating to plaintiffs' motion for class certification.

{¶ 19} R.C. 149.43(A)(1)(mm) was amended again on September 30, 2021, by Am.Sub.H.B. 110. This amendment provided:

Except as otherwise provided in division (A)(1)(oo)[1] of this section, telephone numbers for a victim, as defined in section 2930.01 of the Revised Code or a witness to a crime that are listed on any law enforcement record or report.

{¶ 20} On December 10, 2021, the trial court denied the defendants' fourth motion to dismiss, reasoning that "a live justiciable controversy continues to exist between the parties."

{¶ 21} On August 5, 2022, defendants filed a supplemental motion for summary judgment. The plaintiffs responded, and in the opposition to summary judgment, requested that the court grant their pending summary judgment motion, filed prior to the second amended complaint, in essence renewing their motion for summary judgment even after the second amended complaint had been filed. In their responsive motion, the plaintiffs maintained that the amendments were immaterial and did not act to moot the complaint. The plaintiffs maintained that because the original enactment of the contested sections violated the one-subject rule pursuant to Article II, Section 15(D) of the Ohio Constitution, those enactments were nullities in and of themselves and therefore, any amendments to them were invalid because it is impossible to "amend" something that does not properly exist.

---

[1] Though this section is not disputed in the instant matter, (A)(1)(oo), as amended on September 30, 2021, provided that the following is *not* a public record:

Telephone numbers for a party to a motor vehicle accident subject to the requirements of section 5502.11 of the Revised Code that are listed on any law enforcement record or report, except that the telephone numbers described in this division are not excluded from the definition of "public record" under this division on and after the thirtieth day after the occurrence of the motor vehicle accident.

{¶ 22} In June 2023, the court granted the plaintiffs' motion for summary judgment and denied the defendants' motion for summary judgment. The court found that R.C. 149.43(A)(1)(mm) and 1349.05 were unenforceable under the Ohio Constitution and granted a permanent injunction. The trial court also granted the motion for class certification.

{¶ 23} The defendants appealed, assigning four errors for our review:

I. The trial court erred by denying appellants' second motion to dismiss for mootness.[2]

II. The trial court erred by granting the appellees' motion for class certification.

III. The trial court erred by granting the appellees' motion for summary judgment and denying the appellants' motion for summary judgment.

IV. The trial court erred by granting appellees' motion for preliminary injunction, in part.

## II. Law and Analysis

{¶ 24} For ease of discussion, we discuss defendants' assignments of error out of order.

---

2 This assignment of error is premised on the motion filed on April 23, 2021, captioned by appellants as "second motion to dismiss for mootness" but, temporally, was the fourth motion to dismiss filed in this matter. We therefore refer to it as the fourth motion to dismiss for ease of discussion throughout.

## A. Motion to Dismiss

{¶ 25} In the first assignment of error, the defendants challenge the trial court's denial of their fourth motion to dismiss.

{¶ 26} The standard of review for a motion to dismiss pursuant to Civ.R. 12(B)(1) is "whether any cause of action cognizable by the forum has been raised in the complaint." *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80, 537 N.E.2d 641 (1989). A trial court's decision on a Civ.R. 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction is reviewed de novo. *Rheinhold v. Reichek*, 8th Dist. Cuyahoga No. 99973, 2014-Ohio-31, ¶ 7, citing *Bank of Am. v. Macho*, 8th Dist. Cuyahoga No. 96124, 2011-Ohio-5495, ¶ 7.

{¶ 27} Article IV, Section 4(B) of the Ohio Constitution provides that "the courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters." The power and duty of the judiciary to determine a legislative enactment's constitutionality is firmly established in Ohio law. *UAW, Local Union 1112 v. Brunner*, 182 Ohio App.3d 1, 2009-Ohio-1750, 911 N.E.2d 327, ¶ 12 (10th Dist.), citing *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 462, 715 N.E.2d 1062 (1999).

{¶ 28} Thus, the question before us is whether the second amended complaint alleged a "justiciable matter." The Ohio Supreme Court instructs that justiciable questions require a concrete danger or dilemma to the plaintiff, not a possibility that hypothetical future events may cause danger or dilemma to the

plaintiff. *Mid-American Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 9.

{¶ 29} Recently, the Ohio Supreme Court instructed that "[a]lthough a case may present a live dispute at the time it is filed, subsequent events *may* transform it into one involving only a hypothetical dispute." (Emphasis added.) *Highland Tavern, L.L.C. v. DeWine*, 173 Ohio St.3d 59, 2023-Ohio-2577, 227 N.E.3d 1148, ¶ 28. The *Highland Tavern* Court proceeded to cite, as an example, "when a party alleges that a law is unconstitutional and the law at issue is repealed or materially amended while the case is underway." *Id.*, citing *Hill v. Snyder*, 878 F.3d 193, 203-204 (6th Cir.2017). The court continued that "[i]n that situation the case is no longer 'live' and the case is *ordinarily* moot." (Emphasis added.) *Id.*, citing *Hill* at 203. The *Highland Tavern* Court's use of the words "may" and "ordinarily" indicate that a situation could exist where a legislative enactment could still be challenged as unconstitutional, even after it is repealed or materially amended.

{¶ 30} Here, the plaintiffs' second amended complaint disputed the constitutionality of the pertinent sections on two grounds: (1) the enactment of the sections was unconstitutional because the enactments violated the Ohio Constitution's one-subject rule, therefore rendering all later amendments void ab

initio, and (2) the substance of the contested sections violates the Ohio Constitution's free speech and equal protection[3] clauses.

{¶ 31} We first address whether the General Assembly's amendments rendered plaintiffs' claims of unconstitutional enactment moot or if the second amended complaint presented a justiciable controversy. In *Brunner*, 182 Ohio App.3d 1, 2009-Ohio-1750, 911 N.E.2d 327, at ¶ 33, the Tenth District recognized that "the clear precedent set by the Supreme Court of Ohio addressing the effect of amendments to those statutes that are invalid in their entirety from the outset due to the circumstances of enactment" is found in *Stevens v. Ackman*, 91 Ohio St.3d 182, 743 N.E.2d 901 (2001). In *Stevens*, the Ohio Supreme Court observed that "even if [the General Assembly] intends the ordinary text in an otherwise-amending statute to be a recognition of existing prior law, any infirmity in enacting that prior law is not remedied by the subsequent amending statute." *Brunner* at ¶ 34, citing *Stevens* at 194. In their unconstitutionality-in-the-enactment argument, the plaintiffs dispute the constitutional validity of the contested sections in their entirety and argue that because these sections were merely amended by subsequent amendments rather than reenacted by subsequent enactments, they are void ab initio and any amendments thereto are a nullity.

---

[3] Plaintiffs formally abandoned their equal protection claims in their motion for summary judgment dated October 9, 2020. However, the plaintiffs reasserted violations of equal protection in their second amended complaint. Nonetheless, we find that plaintiffs' response to defendants' amended motion for summary judgment adopted all of their arguments in the plaintiffs' original summary judgment motion and thus, again abandoned the equal protection claims. Accordingly, we do not consider any arguments pertaining to equal protection.

{¶ 32} There is no dispute that the contested sections were originally enacted by the Bill; in other words, prior to the Bill, these contested sections did not exist at all. They have since been amended, but, pursuant to *Stevens* and *Brunner*, these amendments do not necessarily cure an infirmity from the enactment. The provisions, though later amended, were not repealed and pertain to the same topic and are substantively similar to the original enactments; plaintiffs' allegations that the contested sections violate the one-subject rule survive the amendments because they apply to the enactment of the statute in its entirety. *See also Middletown v. Ferguson*, 25 Ohio St.3d 71, 80, 495 N.E.2d 380 (1986) (suggesting that if a legislative enactment is "unconstitutional at the time of its passage, it was void from its inception."). Thus, plaintiffs' ability to challenge the contested statutes as violating the one-subject rule remains justiciable, despite the amendments.

{¶ 33} We next address whether the General Assembly's amendments rendered plaintiffs' challenges to the constitutionality of R.C. 1349.05 on free speech grounds moot. Plaintiffs maintain that because the substance of the amendments remained the same as the contested sections and still purportedly restricted the speech of health practitioners, the amendments did not cure the alleged unconstitutionality of the statute.

{¶ 34} In *Toledo v. State*, 6th Dist. Lucas Nos. L-21-1031 and L-21-1032, 2022-Ohio-1192, ¶ 30, the Sixth District relied on this distinction, finding that "[i]f the General Assembly were to repeal the contested provisions of [the contested bill in *Toledo*], we would find * * * that the city's claims are no longer justiciable." In

*Toledo*, the court relied on a Sixth Circuit Court of Appeals decision that instructs "when a challenged provision is repealed or amended during the pendency of the litigation[,] * * * courts must determine whether a statute has been 'sufficiently altered so as to present a substantially different controversy.'" *Hill v. Snyder*, 878 F.3d 193, 204 (6th Cir.2017), quoting *Green Party v. Hargett*, 700 F.3d 816, 823 (6th Cir.2012). Here, the second amended complaint specifically incorporated R.C. 1349.05 as amended and blanketly stated that "R.C. 1349.05, both as originally enacted and subsequently amended, imposes an unconstitutional prohibition upon lawful and accurate commercial speech in an arbitrary, indiscriminate, and overbroad manner." And that "R.C. 1349.05, both as originally enacted and subsequently amended, prohibits the free exchange of all types of advice between a health-care practitioner and potential patient, and is thus irreconcilable with the State Constitution."

{¶ 35} In moving to dismiss plaintiffs' second amended complaint pursuant to Civ.R. 12(B)(1), the only issue before the trial court was whether the second amended complaint raised a cause of action that is cognizable by the forum. Based on the foregoing, we determine that the second amended complaint sufficiently raised claims that were justiciable by the trial court. Accordingly, we affirm the trial court's judgment denying the defendants' fourth motion to dismiss.

## B. Summary Judgment

{¶ 36} In the third assignment of error, defendants argue that the trial court erred by granting plaintiffs' motion for summary judgment and denying defendants' motion for summary judgment.

{¶ 37} In the supplemental motion for summary judgment, the defendants argued that all of plaintiffs' claims were moot as a result of the amendments. In response, the plaintiffs maintained that because the initial enactment of the contested sections violated Ohio's one-subject rule, all amendments were null and void.

{¶ 38} Civ.R. 56(C) provides that summary judgment "shall" be rendered "if the pleadings * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made * * *[.]" Civ.R. 56(C). A trial court's ruling on a motion for summary judgment is reviewed de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 24 (1996).

{¶ 39} Statutes generally enjoy a strong presumption of constitutionality. *State v. Cook*, 83 Ohio St.3d 404, 409, 700 N.E.2d 570 (1998). Relevant to this case, however, Article II, Section 15(D) of the Ohio Constitution, known as the "one-subject rule," provides that "[n]o bill shall contain more than one subject, which

shall be clearly expressed in its title." The rule "prevent[s] logrolling, which occurs when legislators combine disharmonious proposals in a single bill to ensure passage of proposals that might not have won acceptances on their own." *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 146 Ohio St.3d 315, 2016-Ohio-478, 56 N.E.3d 913, ¶ 15, citing *State ex rel. Dix v. Celeste*, 11 Ohio St.3d 141, 142-143, 464 N.E.2d 153 (1984). The judiciary has limited enforcement of the one-subject rule, and as such, we must liberally construe the term "subject" for purposes of the rule. *Ohio Civ. Serv. Emps. Assn.* at ¶ 16. The one-subject rule does *not* prohibit a plurality of topics, but it does prohibit a disunity of subjects. *State ex rel. Hinkle v. Franklin Cty. Bd. of Elections*, 62 Ohio St.3d 145, 148, 580 N.E.2d 767 (1991). That a bill embraces several topics is not fatal so long as a "common purpose or relationship" exists between the topics. *Hoover v. Franklin Cty. Bd. of Commrs.*, 19 Ohio St.3d 1, 6, 482 N.E.2d 575 (1985). Further, "the determination of a [statute's] constitutionality is dependent primarily, if not exclusively, on a case-by-case, semantic and contextual analysis." *Dix* at 145.

{¶ 40} The Ohio Supreme Court has also recognized that analysis of the one-subject rule with respect to appropriation bills may be difficult because appropriations bills "'encompass many items, all bound by the thread of appropriations.'" *Rumpke Sanitary Landfill, Inc. v. Ohio*, 184 Ohio App.3d 135, 2009-Ohio-4888, 919 N.E.2d 826, ¶ 16 (1st Dist.2009), quoting *Simmons-Harris v. Goff*, 86 Ohio St.3d 1, 711 N.E.2d 203 (1999).

{¶ 41} An enactment's title "'indicates the purpose which induced the enactment of such law[.]'" *Comtech Sys. v. Limbach*, 59 Ohio St.3d 96, 102, 570 N.E.2d 1089 (1991), quoting *Lexa v. Zmunt*, 123 Ohio St. 510, 513, 176 N.E. 82 (1931). The full title of the Bill provides that the amendments and enactments "make operating appropriations for the biennium beginning July 1, 2019, and ending June 30, 2021, to levy a tax on nicotine vapor products, and to provide authorization and conditions for the operation of state programs." As the Ohio Supreme Court pointed out in *Civ. Serv. Emps. Assn.*, which considered the 2012-2013 budget bill, the primary subject of an appropriations or budget bill is "balancing state expenditures against state revenues to ensure continued operation of state programs." *Id.* at ¶ 23. We therefore find that the budget bill in the instant matter pertains to the same subject as the budget bill in *Civ. Serv. Emps. Assn.*, which is balancing state expenditures against state revenues to ensure continued operation of state programs.

{¶ 42} The defendants cited to *Civ. Serv. Emps. Assn.*, 146 Ohio St.3d 315, 2016-Ohio-478, 56 N.E.3d 913, overruling a one-subject challenge relating to prison privatization provisions in a budget bill, finding that allowing privatization of prisons provided for significant cost savings, the funding of continued operations of state programs, and the sale of five correctional facilities, generating revenue. *Id.* at ¶ 23-35. They argue that this case is identical because violations of the contested sections generate revenue by fining violators of the section anywhere from $5,000 to $25,000. The defendants also note that since R.C. 1349.05 (D) and (E) provided

for hearings, the fees and mileage for subpoenaed witnesses shall be paid from the fund in the state treasury pursuant to R.C. 119.09 and the payment of fees under R.C. 119.092(D), which provides for the expenditure of state funds.

{¶ 43} We find, however, that this case is distinct from *Civ. Serv. Emps. Assn.* based on the evidence before us. In their summary judgment motion and on appeal, the plaintiffs argue that the contested sections "were slipped into the 2,600-page Biennial Budget Bill by a conference committee at the last moment" and that the General Assembly, in a prior session, had considered "*less extreme*[4] anti-solicitation language" in S.B. 148, which died in the Ohio Senate after numerous opponents, many of whom were chiropractors, testified against the bill. The defendants maintain that despite the plaintiffs' objections to the bill, the joint stipulation of facts demonstrates that S.B. 148, which was never enacted, actually had several proponents, including chiropractors.

{¶ 44} While we appreciate this argument, there is no denying that even with multiple proponents, S.B. 148 died in the senate and then, more extreme provisions were slipped into the Bill, the subject of the instant litigation, without collecting any testimony either for or against the provisions. This, then, creates the appearance that inserting the contested provisions into the Bill, a budget bill, skirted the formal testimonial process that prevented prior, similar provisions from passage.

---

4 S.B. 148, as introduced, contemplated that "[n]o person shall use the information contained in an accident report to contact any other person for commercial solicitation purposes unless that other person specified in the accident report that the person wishes to be contacted." S.B. 148 (132nd General Assembly).

{¶ 45} When there is a strong suggestion that provisions in an act were combined for tactical reasons, such as here where prior attempts to garner support for substantively similar enactments were unsuccessful, "this [is] the very evil the one-subject rule was designed to prevent" and the unrelated provisions "must necessarily be held to be invalid in order to effectuate the purposes of the rule." *Dix*, 11 Ohio St.3d at 145, 464 N.E.2d 153.

{¶ 46} This court has previously found that where the facts giving rise to the adoption of the contested statute as well as the nexus between the contested statute and the budget bill are suggestive that the provisions were combined for tactical reasons, this is "a classic instance of impermissible logrolling." *Cleveland v. State*, 2013-Ohio-1186, 989 N.E.2d 1072, ¶ 45 (8th Dist.). As in *Cleveland*, the state cannot point to hearings or testimony in the record related to the specific contested legislation, only to testimony taken from proposed bills that came before the Bill. *Id*. at ¶ 44. We find that the same reasoning is applicable to the contested sections that substantially and materially alter the business practices of numerous healthcare providers, namely chiropractors, that included potential exposure to significant personal and financial penalties. The substance and circumstances of enactment all point to a violation of the one-subject rule.

{¶ 47} We further note that despite the strong presumption of constitutionality, various Ohio and federal courts charged with addressing Ohio's one-subject rule have not hesitated to strike down obvious "riders" on legislative enactments, especially those attached to budget or appropriations bills. *See, e.g.,*

*Cleveland* at ¶ 46 (holding that amendments relating to a city's ability to regulate the sale of trans fats placed in an appropriations bill violated the one-subject rule); *Simmons-Harris*, 86 Ohio St.3d at 17, 711 N.E.2d 203 (holding that the inclusion of a school voucher program in an appropriations bill violated the one-subject rule); *Kljun v. Morrison*, 2016-Ohio-2939, 55 N.E.3d 10, ¶ 29 (8th Dist.) (holding that a budget bill that included distribution of funds by the Bureau of Workers' Compensation violated the one-subject rule); *Plain Local School Dist. Bd. of Edn. v. DeWine*, 486 F.Supp.3d 1173, 1202 (S.D.Ohio 2020) (holding that a rider violated the one-subject rule where the circumstances surrounding the addition of the provision to a budget bill demonstrated that by slipping the matter into a budget bill, "the proponents of the statute were able to ensure there would be no public debate — not to mention vote — on the standalone merits of the transfer statute."); *Gallipolis Care, L.L.C. v. Ohio Dept. of Health (In re Holzer Consol. Health Sys.)*, 10th Dist. Franklin No. 03AP-1020, 2004-Ohio-5533, ¶ 37 (holding that a provision in a budget bill violated the one-subject rule where "the record indicates that the section was inserted into the bill late in the process and for what appear to be tactical reasons").

{¶ 48} We reiterate that in *Stevens*, 91 Ohio St.3d 182, 743 N.E.2d 901, the Supreme Court of Ohio "observed that the legislature, even if it intends the ordinary text in an otherwise-amending statute to be a recognition of existing prior law, any infirmity in enacting that prior law is not remedied by the subsequent amending statute." *Brunner*, 182 Ohio App.3d 1, 2009-Ohio-1750, 911 N.E.2d 327, at ¶ 34.

{¶ 49} Here, while the defendants argue otherwise, the General Assembly, in all of the amendments to the contested sections, merely amended the statute and left provisions from the original enactment, challenged as violating the one-subject rule, untouched — exactly the situation that *Stevens* contemplates. As the Eleventh District observed, "Although appellants contend that the inclusion of the language restating the provisions improperly enacted by [the contested bill] renders moot the challenge to the constitutionality of [the contested bill], this argument has been rejected by other courts when the statute is merely amended and the statute is not a reenactment of the original legislation." *Living Trust v. Concord Twp.*, 11th Dist. Lake No. 2011-L-068, 2012-Ohio-981, ¶ 27, citing *Brunner* at ¶ 35; *Stevens* at 194-195. Additionally, "'[a]n unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.'" *Middletown v. Ferguson*, 25 Ohio St.3d 71, 80, 495 N.E.2d 380 (1986), quoting *Norton v. Shelby Cty.*, 118 U.S. 425, 442, 6 S.Ct. 1121, 30 L.Ed. 178 (1886).

{¶ 50} Here, the General Assembly similarly did not "reenact" the contested sections in their entirety when the amendments were made, which would be required for any court to find that the statutes were properly repealed and reenacted. Every single amendment that changed the contested sections states that it amends, rather than enacts, the language of each of the contested sections. Based on this analysis, and taking into consideration that each case's specific facts are determinative of the outcome herein, we find that the initial enactment of the

contested sections by the Bill was an unconstitutional violation of the one-subject rule and that all the subsequent amendments are void because they amend provisions that were not constitutionally enacted. *See also Middletown* at *id.* ("[A]n unconstitutional law must be treated as having no effect whatsoever from the date of its enactment[.]")

{¶ 51} Because we determine that the enactment of the contested sections was unconstitutional, we need not reach the substantive constitutional argument relating to plaintiffs' free speech concerns. The Ohio Supreme Court directs that "[w]e have long held that '[c]onstitutional questions will not be decided until the necessity for a decision arises on the record before the court.'" *In re Black Fork Wind Energy, L.L.C.*, 156 Ohio St.3d 181, 2018-Ohio-5206, 124 N.E.3d 787, ¶ 29, quoting *State ex rel. Herbert v. Ferguson*, 142 Ohio St. 496, 503, 52 N.E.2d 980 (1944). Further, "'if it is not necessary to decide more, it is necessary not to decide more.'" *Capital Care Network of Toledo v. Ohio Dept. of Health*, 153 Ohio St.3d 362, 2018-Ohio-440, 106 N.E.3d 1209, ¶ 31, quoting *PDK Laboratories Inc. v. United States DEA*, 360 U.S.App.D.C. 344, 357, 362 F.3d 786 (2004) (Roberts, J., concurring in part and concurring in judgment).

{¶ 52} The defendants' third assignment of error is not well-taken. We affirm the judgment of the trial court and note that the proper action is to sever the offending portions herein deemed defective from the legislation. *Gallipolis Care, L.L.C.*, 10th Dist. Franklin No. 03AP-1020, 2004-Ohio-5533, at ¶ 38, citing *State v. Hochhausler*, 76 Ohio St.3d 455, 464, 668 N.E.2d 457 (1996).

## C. Class Certification

{¶ 53} In the second assignment of error, defendants argue that the trial court erred in granting class certification. Defendants raise several reasons that the trial court erred in granting the motion for class certification, some procedural and some substantive. Nonetheless, based on our disposition of the third assignment of error, we find that the issue of class-certification is moot and vacate the trial court's judgment granting class certification.

{¶ 54} Unique to this case, plaintiffs did not seek monetary damages related to the unconstitutionality of the contested section, nor is there any proof in the record that any plaintiff or potential plaintiff incurred any fines or suffered monetary damages as a result of the contested portion (which has since been removed by amendment). In fact, the only relief plaintiffs sought was a declaration that the statute was unconstitutional and injunctive relief from its enforcement. As this court has previously acknowledged, "'[I]t is not necessary to certify a Civ.R. 23(B)(2)[5] injunctive class where an individual judgment as to the constitutionality of a statute or ordinance will inure to the benefit of all potential class members because the statute or ordinance will be found either constitutional or unconstitutional.'" *Gottlieb v. S. Euclid*, 157 Ohio App.3d 250, 2004-Ohio-2705, 810 N.E.2d 970, ¶ 33 (8th Dist.), quoting *State ex rel. Horvath v. State Teachers*

---

[5] Civ.R. 23(B)(2) provides that a class action may be maintained if Civ.R. 23(A) is satisfied and "[t]he party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

*Retirement Bd.*, 10th Dist. Franklin No. 94APE07-988, 1995 Ohio App. LEXIS 1292, 20 (Mar. 31, 1995).

{¶ 55} The circumstances contemplated in *Gottlieb* and *Horvath* are present in the instant matter. The plaintiffs were only seeking a declaration that the contested sections were unconstitutional and injunctive relief barring the enforcement of the statute. All potential class members reap the benefits of the judgment that plaintiffs sought.

{¶ 56} We therefore vacate the trial court's judgment granting class certification and sustain the defendants' second assignment of error.

## D. Preliminary Injunction

{¶ 57} In the final assignment of error, the defendants argue that the trial court erred in granting plaintiffs' motion for preliminary injunction. However, because of our resolution of the third assignment of error in favor of the plaintiffs, we overrule the final assignment of error is moot.

{¶ 58} "When a preliminary injunction has been preempted by the issuance of a permanent injunction, the substance of the preliminary injunction becomes moot." *Fatica Renovations, LLC v. Bridge*, 2018-Ohio-4949, 125 N.E.3d 184, ¶ 39 (11th Dist.), citing *Great Plains Exploration, LLC v. Willoughby*, 11th Dist. Lake No. 2006-L-022, 2006-Ohio-7009, ¶ 13; *Columbiana v. J & J Car Wash, Inc.*, 7th Dist. Columbiana No. 04 CO 20, 2005-Ohio-1336, ¶ 21.

# III. Conclusion

{¶ 59} We affirm the trial court's judgment as to assignment of error Nos. 1 and 3, vacate the trial court's judgment granting class certification, and overrule assignment of error No. 4 as moot.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

MARY EILEEN KILBANE, P.J., and
LISA B. FORBES, J., CONCUR